## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT ("Agreement") is made this ___8___ day of February 2018, by and between Plaintiff, TRACY THORPE ("Plaintiff" or "Thorpe") and Defendants SUPERIOR PROPERTY SERVICES MAINTENANCE, INC. ("Superior"), LEON J. NELSON ("Nelson"), and PATRICIA MCEACHIN ("McEachin")[1] (Superior, Nelson and McEachin are collectively referred to as "Defendants"). Superior shall also collectively include all past and present parents, successors in interest and assigns, subsidiaries, divisions, departments, wholly-owned corporations or partnerships, ~~business associations,~~ sole proprietorships, and its current or former officers, agents, representatives, fiduciaries, administrators, directors, stockholders, attorneys, owners, shareholders, members, agents, partners, or employees, in both their individual and official capacities. The aforementioned Plaintiff and Defendants will be collectively referred to in this agreement as the "Parties."

### RECITALS

WHEREAS, on or about December 5, 2017, Plaintiff, through his attorney, filed a lawsuit in the United States District Court, Southern District of Florida (Case No: 2017-CV-62384-BB) which alleged that Defendants violated the Fair Labor Standards Act, 29 U.S.C § 201-219 ("FLSA") (the "Lawsuit");

WHEREAS, on January 8, 2018, Superior filed a counterclaim against Thorpe for unjust enrichment (the "Counterclaim");

WHEREAS, the Parties deny any liability toward the other, and deny any wrongdoing whatsoever to the other.

---

[1] Patricia McEachin acknowledges and verifies that she is the person misidentified as "Patricia Nelson" in the subject Lawsuit.

1

**WHEREAS**, for purposes of avoiding costly litigation and in order to reach an amicable resolution of the claims and disputes by and among the Parties, the Parties desire to compromise, fully and finally settle, any and all actual or potential claims, that Plaintiff may have against Defendants, including but not limited to those claims raised, or which could have been raised, in the Lawsuit; and

**NOW, THEREFORE**, in consideration of the mutual promises and agreements set out herein, Plaintiff and Defendants agree as follows:

1. **Dismissal of Lawsuit.** Promptly after the Parties' sign this Agreement, the Parties shall jointly file a Motion requesting the Court in the Lawsuit approve this Agreement and to dismiss the Lawsuit and Counterclaim with prejudice as to all Parties, with each party bearing their own attorneys' fees and costs except as otherwise set forth in this Agreement. The Parties shall also request the Court to retain jurisdiction to enforce the terms of this Agreement.

2. **Consideration Paid to Plaintiff:** Superior shall pay to Plaintiff and his counsel the gross amount of five thousand two hundred and ninety-five dollars and twenty-six cents (**$5,295.26**) (the "Settlement Amount"), inclusive of backpay, liquidated damages, consideration for a release of the FLSA claims and a separate release of general claims, and attorney's fees and costs.

The Settlement Amount shall be paid as follows: (1) $573.82 less applicable withholdings, as backpay made payable to Thorpe, paid within twenty days of the Court approving this Agreement ("Backpay Installment 1"); (2) $573.82 as liquidated damages made payable to Thorpe, paid within twenty days of the Court approving this Agreement ("Liquidated Damages Installment 1"); (3) $573.82 less applicable withholdings, as backpay made payable to Thorpe, paid within fifty days of the Court approving this Agreement ("Backpay Installment 2"); (4) $573.82 as

liquidated damages made payable to Thorpe, paid within fifty days of the Court approving this Agreement ("Liquidated Damages Installment 2"); (5) $1,500.00 for attorneys' fees and costs made payable to Plaintiff's counsel Bober & Bober, P.A., paid within twenty days of the Court approving this Agreement ("Fees and Costs Installment 1"); and (5) $1,500.00 for attorneys' fees and costs made payable to Plaintiff's counsel Bober & Bober, P.A., paid within fifty days of the Court approving this Agreement ("Fees and Costs Installment 2").

If any of the above payments' due dates fall on a legal holiday or weekend, said payments would be due the next business day. Plaintiff shall receive an IRS Form W-2 for the payment of Backpay and Liquidated Damages.

In the event any payment due under this Agreement is not timely made, Superior shall have a two-business day right to cure period from the date its counsel, Joshua Entin, receives notice of such default via email and fax from Plaintiff's counsel. The notice of default shall be emailed and faxed to counsel for Superior at: josh@entinlaw.com and (954) 764-2443. In the event Superior fails to timely cure said default after receiving notice, Plaintiff may file an unopposed motion for default final judgment against Defendants in the amount of $7,295.26 less any monies paid under this Agreement.

This Agreement is contingent upon Court approval.

3. **Tax Forms and Liability:** Plaintiff agrees that he shall be liable for any and all taxes, if any, which may be due as a result of the non-wage consideration received from the settlement of the disputed claims set forth in this Agreement. Contemporaneous with the execution of this agreement, the Plaintiff and his attorney shall provide to the Defendants executed IRS Form W-9's with their current addresses.

3

4. **No Representations by Defendants.** Defendants make no representations regarding the tax obligations that may arise to Plaintiff from the Settlement Amount. The Parties agree and acknowledge that Plaintiff would not be entitled to this Settlement Amount but for this Agreement.

5. **Representations by Plaintiff.** Plaintiff warrants and represents that he resigned from his employment with Superior. Plaintiff further warrants and represents that he does not have any other known claims against the Defendants under any federal, state or common law.

6. **Plaintiff's Release of Claims.** In exchange for the consideration described in this Agreement, the Plaintiff irrevocably, knowingly, and voluntarily releases, waives, and forever discharges any and all claims, demands, actions, or causes of action, of any kind whatsoever, known or unknown, foreseen or unforeseen, foreseeable or unforeseeable, and any consequences thereof, which Plaintiff has or may have against Defendants and each of the above referenced individuals and entities' owners, members, partners, spouses, shareholders, officers, directors, employees, attorneys, successors, and assigns (collectively the "Defendant Releasees"), from the beginning of the world until the effective date of this Agreement, based on any claims, known or unknown, as more fully described herein. The disputes released by Plaintiff include, but are not limited to, any and all disputes against Defendant Releasees concerning Plaintiff's employment, wages, and separation from employment with Defendant Releasees. The disputes released by Plaintiff include those known or unknown, actual or contingent, in law, in equity, or otherwise and whether based in tort, contract, statute, or any other basis. This release includes all disputes for which Plaintiff could seek equitable relief, and actual, compensatory, consequential, liquidated, punitive, special, multiple or other damages, expenses (including attorneys' fees and costs), and

all other reimbursements or charges of any kind. The disputes released include, but are not limited to, any claim(s) under:

- Title VII of the Civil Rights Act of 1964;
- The Civil Rights Act of 1991;
- The Florida Civil Rights Act of 1992;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Constitutions of the United States and the State of Florida;
- The Employee Retirement Income Security Act of 1974;
- The Florida Health Insurance Coverage Continuation Act;
- The Florida Wage Discrimination Law;
- Florida Wage and Hour laws;
- Any Florida or federal whistleblower laws;
- The Internal Revenue Code;
- The Rehabilitation Act;
- The Consolidated Omnibus Budget Reconciliation Act;
- The Immigration Reform and Control Act of 1986;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act, including the Older Workers Benefit Protection Act;
- The Fair Labor Standards Act;
- The Equal Pay Act of 1963;
- The Occupational Safety and Health Act;
- The Family and Medical Leave Act of 1993;
- The National Labor Relations Act; or
- Any other federal, state, or local civil or human rights law or any other federal, state, or local law, regulation, or ordinance.

The disputes released also include any and all disputes Plaintiff believes to have against Defendant Releasees in contract or at common law, including, but not limited to, breach of oral, written and/or implied contract an implied covenant of good faith and fair dealing, wrongful discharge under any theory, including for lack of good cause, in violation of public policy, and constructive discharge, intentional and negligent infliction of emotional distress, any tort action, negligent retention and supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, unfair dealing, breach of fiduciary or other duty, invasion of privacy, defamation, false imprisonment, and interference with contract and/or prospective economic advantage.

The reference herein to specific statutory, contract and common law claims is in no way intended to limit the disputes released. The Parties intend that the disputes Plaintiff is releasing be construed as broadly as possible to cover any and all disputes Plaintiff may have or believe to have against Defendant Releasees. In that regard, Plaintiff further acknowledges that Plaintiff may later discover facts in addition to or different from those which Plaintiff now knows or believes to be true. Plaintiff agrees that any such difference in the facts shall not affect this Agreement; that Plaintiff assumes the risk of any such difference in the facts; and that Plaintiff further agrees that this Agreement shall remain in full force and effect and not be subject to rescission by reason of any such difference in the facts.

Except for the requirements set forth in section 2 of this Agreement, Plaintiff understands that nothing in this Agreement prohibits him from filing a charge with or participating in any investigation or proceeding before any federal, state or local governmental agency such as the Equal Employment Opportunity Commission and does not prohibit him from challenging the validity of the waiver and release set forth herein. However, Plaintiff agrees that with respect to the claims he is waiving, he is waiving not only his right to recover money or other relief in any action that he might institute but also that he is waiving his right to recover money or other relief in any action that might be brought on his behalf by any other person or entity including, but not limited to, the State of Florida, the United States Equal Employment Opportunity Commission, the Florida Commission on Human Relations, the United States Department of Labor, or any other (U.S. or foreign) federal, state, or local agency or department. Plaintiff further represents that he has not heretofore assigned or transferred, or purported to have assigned or transferred, to any entity or person any dispute released herein.

7. **Defendants' Release of All Claims:**

6

In exchange for the consideration described in this Agreement, the Defendants irrevocably, knowingly, and voluntarily release, waive, and forever discharge any and all claims, demands, actions, or causes of action, of any kind whatsoever, known or unknown, foreseen or unforeseen, foreseeable or unforeseeable, and any consequences thereof, which Defendants have or may have against Plaintiff, from the beginning of the world until the effective date of this Agreement, based on any claims, known or unknown. The disputes released also include, but are not to limited to, any and all disputes Defendants believe to have against Plaintiff in contract or at common law, including, but not limited to, breach of oral, written and/or implied contract an implied covenant of good faith and fair dealing, wrongful discharge under any theory, including for lack of good cause, in violation of public policy, and constructive discharge, intentional and negligent infliction of emotional distress, any tort action, negligent retention and supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, unfair dealing, breach of fiduciary or other duty, invasion of privacy, defamation, false imprisonment, and interference with contract and/or prospective economic advantage.

8. **No Admission of Liability**: Defendants expressly deny any liability whatsoever and agree that this Agreement is tendered to resolve all issues currently pending. Further, all Parties agree that entering into this Agreement shall not be construed as an admission by Defendants of any violation of contract, duty, law, ordinance, regulation or any other theory of relief whether federal, state or local. Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement may be deemed to be, or may be used as, an admission of, or evidence of the validity of any released claim, or of any wrongdoing in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this Agreement.

9. **Intention to Avoid Dispute**: Each Party has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

10. **No Assignment**: Plaintiff represents, covenants and warrants that he has not directly or indirectly assigned, transferred, encumbered, or purported, to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right released and discharged in this Agreement.

11. **Neutral Reference and No Rehire:** Plaintiff agrees and acknowledges that he will not seek employment in any capacity with Defendant Releasees, or any business owned or operated by Defendant Releasees, at any time in the future, and that Defendant Releasees have no obligation to rehire Plaintiff, and that Defendant Releasees' failure or refusal to hire Plaintiff shall not be deemed retaliation. Defendants shall provide a neutral reference letter to the Plaintiff, signed by Leon Nelson, setting forth Plaintiff's start and end dates and positions, as set forth in the Exhibit attached hereto.

12. **Confidentiality**. Except as otherwise set forth in this paragraph, Plaintiff agrees that he will keep strictly confidential this Agreement and the terms and conditions of this Agreement. If inquiries arise concerning this Agreement or the Lawsuit, Plaintiff may reply that "the matter has been resolved," but shall make no other comment. The only exceptions to the restrictions set forth in this paragraph shall be a disclosure required to report taxes, disclosure required by a court order, or disclosure made by Plaintiff to his respective attorneys, immediate family and/or tax advisor, on the condition that any disclosure by them to any other persons shall be deemed a violation of this Agreement.

13. The Parties' shall file a motion requesting the Court to approve the terms of this Agreement and shall attach a copy of the Agreement to the motion. The Parties shall also include

in the joint motion for approval a breakdown of the Settlement Amount, a discussion of the defenses in this case, and the fact that Defendant is not admitting any liability or wrongdoing in entering into this Agreement. The filing of the Joint Motion for approval and submittal of the Agreement to the Court shall not be deemed a breach of this provision.

14. **Non-Disparagement**. Plaintiff will not disparage Defendants, or any of their directors, officers, or agents, or otherwise take any action which could reasonably be expected to adversely affect Defendants' reputations. Similarly, Defendants will not disparage Plaintiff or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of Plaintiff.

15. **Governing Law:** The terms of this Agreement will be construed in accordance with the laws of the State of Florida, and where applicable, federal law.

16. **Enforcement of Agreement:** The Parties agree that the Court in the Lawsuit shall retain jurisdiction to enforce the terms of this Agreement, unless said Court refuses to retain jurisdiction, in which case this Agreement shall be enforceable in the appropriate court in Broward County, Florida. In any action to enforce the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs.

17. **Severability:** If any provision of this Agreement or the application thereof is held invalid, such invalidation shall not affect other provisions or application of this Agreement and to this end the provisions of this Agreement are declared severable.

18. **Parties Represented by Counsel:** This Agreement is not to be construed against any party. All Parties were represented by counsel and participated in the drafting of this Agreement.

19. **Execution:** This Agreement shall become effective upon the date the last signatory executes this Agreement. This Agreement can be executed in counterparts. An executed version of this Agreement, if transmitted via email or facsimile, shall be effective and binding as if it were the originally executed document.

20. **Entire Agreement.** All Parties represent and agree that they are not relying on any representations, promises, statements, or agreements not contained in this Agreement. All Parties represent and agree that this is an all-inclusive Agreement and that no other written, oral and/or implied representations, promises or agreements exist between them regarding the subject matter set forth in this Agreement. All Parties represent and agree that this Agreement is a single integrated contract expressing the entire agreement of the Parties regarding the subject matter of this Agreement. This Agreement cannot be modified, amended, terminated, or otherwise changed unless it is done so pursuant to a written document signed by all Parties.

EACH PARTY HAS HAD A FULL AND COMPLETE OPPORTUNITY TO REVIEW THIS AGREEMENT. EACH PARTY HAS CAREFULLY REVIEWED THIS AGREEMENT, UNDERSTANDS ALL OF ITS PROVISIONS AND FREELY AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. IN THE EVENT OF ANY DISPUTE OVER THIS AGREEMENT ALL PARTIES EXPRESSLY WAIVE THEIR RIGHT TO A TRIAL BY JURY.

AGREED TO AND ACCEPTED:

PLAINTIFF:

_____
TRACY THORPE

2/8/18
Date:

**DEFENDANTS:**

_____
SUPERIOR PROPERTY MAINTENANCE SERVICES, INC.

Print Name: Leon A. Nelson

Its: President

Date: 2.8.18

_____
LEON NELSON

Date: 2-8-18

_____
PATRICIA MCEACHIN

Date: 2-8-18

11

# Superior Property Maintenance Services, Inc.
3726 NW 15 Avenue
Lauderhill, FL 33311

To Whom It May Concern:

Please be advised that Mr. Tracy Thorpe was employed with Superior Property Maintenance Services, Inc. from July 2016 to October 2017. During his employment, he worked as a parking lot sweeper. Due to strict company policy, we are unable to provide any other information.

Sincerely,

Leon Jr Nelson